# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Kylon Middleton; Deon Tedder; Amos Wells; Carylye Dixon; Tonya Winbush; Ernestine Moore; South Carolina Democratic Party; DNC Services Corporation/Democratic National Committee and DCCC, <br><br> Plaintiffs, <br><br> v. <br><br> Marci Andino, in her official capacity as Executive Director of the South Carolina State Election Commission, John Wells in his official capacity as Chair of South Carolina State Election Commission, and Clifford J. Edler and Scott Moseley, in their official capacities as members of the South Carolina State Election Commission, <br><br> Defendants. | Civil Action No.: 3:20-cv-01730-JMC <br><br> **ORDER AND OPINION** |

The matter before the court is Defendants Marci Andino, John Wells, Clifford J. Edler, and Scott Moseley's (collectively, "Defendants") Motion for Judgment on the Pleadings (ECF No. 56) pursuant to Federal Rule of Civil Procedure 12(c). Defendants' Motion urges the court to dismiss five[1] claims filed by Plaintiffs Kylon Middleton, Deon Tedder, Amos Wells, Carylye Dixon, Tonya Winbush, Ernestine Moore, the South Carolina Democratic Party ("SCDP"), DNC Services Corporation/Democratic National Committee ("DNC"), and DCCC (collectively, "Plaintiffs"). For the reasons set forth below, the court **DENIES** Defendants' Motion for Judgment on the Pleadings (ECF No. 56).

---

[1] However, on July 8, 2020, the parties filed a Joint Stipulation resolving the Prepaid Postage/Poll Tax claim. (ECF No. 58.)Therefore, the court will only rule on the remaining four claims.

1

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

On May 1, 2020, Plaintiffs filed their Complaint for Injunctive and Declaratory Relief. (ECF No. 1.) In their Complaint, Plaintiffs plead claims for Denial or Abridgement of the Right to Vote on Account of Age under the Twenty-Sixth Amendment of U.S. Const. amend. XXVI and 42 U.S.C. § 1983 (*Count I-Absentee Ballot Age Restriction*); Undue Burden on the Right to Vote under the First Amendment and Equal Protection Clause of U.S. Const. amends. I, XIV, and 42 U.S.C. § 1983 (*Absentee Ballot Age Restriction, Postage Tax, Count II and III-Witness Requirement, Absentee Assistance Claim*); the Imposition of a Poll Tax under the U.S. Const. amends. XIV and XXIV, and 42 U.S.C. § 1983 (*former Count III-Postage Tax*); Vote Denial under § 2 of the Voting Rights Act, 52 U.S.C. § 10301(*Postage Tax, Witness Requirement, Election Day Cutoff, Absentee Ballot Age Restriction, and Absentee Assistance Claim*); Freedom of Speech and Infringement of Speech under U.S. Const. amends. I, XIV and 42 U.S.C. § 1983 (*Count IV and V-Absentee Assistance Claim*); and Violation of § 208 of the Voting Rights Act of 1965, 52 U.S.C. § 10508 Preemption. (ECF No. 1 at 31-32 ¶¶116,123, 35 ¶135, 37 ¶140, 39 ¶148, 41 ¶156.)

Precisely, Plaintiffs' Complaint states, (1) "South Carolina does not provide pre-paid postage on its mail-in absentee ballots, requiring voters to independently secure postage for their ballot to be counted (the 'Postage Tax')"; (2) "South Carolina rejects all mail-in absentee ballots not received by the county by 7:00 p.m. on Election Day (the 'Election Day Cutoff')[,]" S.C. Code Ann. § 7-15-230 (West 2020); and (3) "South Carolina makes it a felony for a candidate or paid campaign staff to assist voters with returning their voted absentee ballots to elections officials (the 'Absentee Assistance Claim')[,]" S.C. Code Ann. § 7-15-385 (West 2020). (ECF No. 1 at 3–4 ¶¶ 5–8.)

On May 7, 2020, Plaintiffs filed a Motion for Preliminary Injunction, (ECF No. 13), pursuant to Federal Rule of Civil Procedure 65 to address, *inter alia*, the immediate and severe effects the coronavirus pandemic had on the primary election scheduled for June 9, 2020 and the run-off election following thereafter. Plaintiffs focused that motion on three requirements that allegedly threatened South Carolinians' right to vote during the COVID-19 pandemic: (1) Absentee Ballot Age Restriction; (2) the Witness Requirement; and (3) the Election Day Cutoff (collectively, the "Challenged Provisions").

On May 21, 2020, the court granted, in part, and denied, in part, Plaintiffs' Motion for Preliminary Injunction (ECF No. 37), thus determining that, for the limited purpose of the June 2020 Primaries, Plaintiffs had shown a likelihood of success on the merits with regard to their challenge to the Witness Requirement. However, the court denied Plaintiffs' Motion concerning the Election Day Cutoff claim,[2] and the court did not address Plaintiffs' Absentee Ballot Age Restriction claim at that time.

On May 29, 2020, Defendants filed an Answer to the Complaint (ECF No. 44) and on June 26, 2020, Defendants filed their Motion for Judgment on the Pleadings (ECF No. 56), seeking dismissal of Counts I, II, III, IV, and V. (ECF No. 56.) On July 8, 2020, the parties filed a joint Stipulation of Dismissal, dismissing "Plaintiffs' Count III and the portions of Count II and IV of the Complaint [only as it] relate[s] to postage [tax claim]." (ECF No. 58 at 2.) On July 10, 2020, Intervenor-Defendant the South Carolina Republican Party filed a Notice of Joinder, informing the

---

[2] "Loss on a preliminary injunction motion may not mean a loss at the trial on the merits. Similarly, a motion to dismiss may result in a rejection of the pleadings, but it does not go to the merits of the case." *Underwood v. Hunter*, 604 F.2d 367, 369 (5th Cir. 1976).

3

court that it joined in Defendants' Motion for Judgment on the Pleadings, but did not file any further argument in support of the Motion. (ECF No. 59.) On the same day, Plaintiffs filed their Response to Defendants' Motion (ECF No. 61) and on July 16, 2020, Defendants filed their Reply to the Response. (ECF No. 65.) Finally, on July 21, 2020, Plaintiffs filed their First Amended Complaint (ECF No. 69), which was amended to remove all claims and allegations relating to prepaid postage from the Complaint but is otherwise identical to the original Complaint. (ECF No. 69.) Defendants' Motion for Judgment on the Pleadings (ECF No. 56) is ripe for adjudication.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is intended to test the legal sufficiency of the complaint and will operate to dispose of claims "where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noted facts." *Cont'l Cleaning Serv. v. UPS*, C/A No. 1:98-cv-1056, 1999 WL 1939249, at *1 (M.D.N.C. Apr. 13, 1999 (citing *Herbert Abstract v. Touchstone Props., Inc.*, 914 F.2d 74, 76 (5th Cir. 1990)). "An issue of fact is deemed to be material if the outcome of the case might be altered by the resolution of the issue one way rather than another." *Walker v. Liberty Mut. Ins. Co.*, C/A No. 4:16-cv-01388-RBH, 2017 WL 1020885, at *1 (D.S.C. Mar. 16, 2017). "[A] motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)." *Deutsche Bank Nat'l Trust Co. v. IRS*, 361 F. App'x 527, 529 (4th Cir. 2010) (citing *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009)).

A motion pursuant to Fed. R. Civ. P. 12(b)(6) "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle

it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The key difference between a Rule 12(b)(6) motion and a Rule 12(c) motion is that the court "consider[s] the answer as well as the complaint" and "documents incorporated by reference in the pleadings" on a 12(c) motion. *Fitchett v. Cnty. of Horry*, C/A No. 4:10-cv-1648-TLW-TER, 2011 WL 4435756, at *3 (D.S.C. Aug. 10, 2011) (citations omitted).

### III. DISCUSSION

Defendants contend they are entitled to the dismissal of four of Plaintiffs' causes of action based on the pleadings alone. Specifically, Defendants urge this court to dismiss Plaintiffs' (1) Twenty-Sixth Amendment claim, (2) First Amendment claim, which challenges the Absentee Ballot Assistance statute S.C. Code § 7-15-385, (3) Voting Rights Act claim, which also challenges the Absentee Ballot Assistance statute on federal pre-emption grounds, and (4) Election Day Cutoff claim. The court will address each claim in turn.

A. <u>The Twenty-Sixth Amendment Claim</u>

The court first addresses Plaintiffs' Twenty-Sixth Amendment claim. Plaintiffs' position is that S.C. Code § 7-15-320 (B)(8), which permits "persons sixty-five years of age or older" to "vote by absentee ballot in all elections," violates their Twenty-Sixth Amendment rights because it intentionally discriminates on the basis of age. (ECF No. 69.) Specifically, Plaintiffs' Amended Complaint alleges the following:

5

> In direct contravention of the Twenty-Sixth Amendment, the Absentee Ballot Age Restriction facially discriminates on the basis of age by making voting by absentee ballot available due solely to a voter's age.

(ECF No. 69 at 31.)

Further, Plaintiffs' Complaint states the following facts in support of their allegations:

> The vast majority of voters must appear in person at the polls to cast their ballot on election day in order to exercise their right to vote, for no other reason than they have not yet had their 65th birthday.

(*Id*. at 2 ¶ 3.)

> The decision to parcel out voting rights "on account of age" is prohibited under any circumstances by the plain text of the 26th Amendment to the U.S. Constitution. **But under the current circumstances, as a global pandemic unprecedented in our time infects thousands more Americans daily and shows few signs of abating, the Absentee Ballot Age Restriction also imposes unconscionably severe burdens on voters that cannot be justified by the State's interests in the restrictions, such that the provision also violates the First and Fourteenth Amendments to the Constitution.**

(*Id*.) (Emphasis added).

> Plaintiff Tonya Winbush is a 45-year-old African American and a citizen and a resident of Anderson County, South Carolina. Voting absentee, either in person or by mail, would make it more easy for Plaintiff Winbush to practice social distancing than casting a ballot in person on Election Day. If Plaintiff Winbush were above the age of 65, she would be able to cast her ballot absentee.

(*Id*. at 7 ¶ 16.)

Defendants argue that the court should dismiss Plaintiffs' Twenty-Sixth Amendment claim because (1) "the amendment protects the fundamental right to vote, not the ability to vote by a particular method," (2) "the amendment simply sought to bring eighteen to twenty-year olds into the electorate, not to do away with every age-based provision related to voting," and (3) "the remedy here would be to prohibit older voters from using their age as a reason to vote by absentee ballot, not to open absentee voting to all voters" as Plaintiffs request. (ECF No. 61.)

6

>The Twenty-Sixth Amendment provides:
>
>The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age.

U.S. Const. amend. XXVI, § 1.

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is functionally identical to Rule 12(b)(6) and the same standard of review applies to motions brought under either rule. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002). Therefore, like a 12(b)(6) motion, the motion for judgment on the pleadings should not be granted if the complaint is based on a cognizable legal theory and contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

Moreover, the "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Jackson Nat. Life Ins. Co. v. Greycliff Partners, Ltd.,* 226 B.R. 407, 419 (E.D. Wis. 1998). As an extension, courts generally do not dismiss claims presenting novel issues of law at the pleadings stage. *See Adato v. Kagan*, 599 F.2d 1111, 1117 (2d Cir. 1979) ("Tenuous theories of liability are better assayed in the light of actual facts than in pleader's supposition."); *Elec. Constr. & Maint. Co. v. Maeda Pac. Corp.*, 764 F.2d 619, 623 (9th Cir. 1985) ("The court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel. . .since it is important that new legal theories be explored. . ."); *Sherman v. St. Barnabas Hosp.*, 535 F .Supp. 564, 571 (S.D.N.Y. 1982) (acknowledging that as a "developing area of the law it would be imprudent at the pleading stage to dismiss categorically the possibility.").

Here, the court observes that Plaintiffs' theory for the Twenty-Sixth Amendment claim is a novel issue of constitutional law, which has not been widely discussed or settled. Indeed, courts considering Twenty-Sixth Amendment claims have acknowledged the "dearth of guidance on what test applies." *N.C. State Conference of the NAACP v. McCrory*, 182 F. Supp. 3d 320, 522 (M.D.N.C. 2016), *rev'd on other grounds*, 831 F.3d 204 (4th Cir. 2016); s*ee also Nashville Student Org. Comm. v. Hargett*, 155 F. Supp. 3d 749, 757 (M.D. Tenn. 2015) ("[T]here is no controlling caselaw. . .regarding the proper interpretation of the Twenty-Sixth Amendment or the standard to be used in deciding claims for Twenty-Sixth Amendment violations based on an alleged abridgment or denial of the right to vote."). This point is clearly illustrated as the vitality of a Twenty-Sixth Amendment claim as it is presented in the context of absentee ballots has been characterized as "seemingly novel," and is currently being debated amongst those in the highest levels of the judiciary. *See e.g. Texas Democratic Party v. Abbott*, 140 S. Ct. 2015 (2020) ("This [same] application raises weighty but seemingly novel questions regarding the Twenty-Sixth Amendment.")

While both parties have cited several cases addressing the Twenty-Sixth Amendment in other contexts, neither has cited any case, deciding the issues before the court at a stage as early on in the litigation as a motion to dismiss. In support of their Motion, Defendants have cited to the Fifth Circuit's decision in *Texas Democratic Party v. Abbott*, 961 F.3d 389 (5th Cir. 2020), whereby the Fifth Circuit stayed a district court's grant of a preliminary injunction on, *inter alia*, the very issue in front of this court—whether the limitation of the right to cast an absentee ballot to "persons sixty-five years of age or older," violates the Twenty-Sixth Amendment's directive that the right to vote "shall not be denied or abridged by the United States or by any State on account of age." While the issue was identical, the court's standard of review was not. Defendants allude

to the notion that the stage of litigation makes no difference in the outcome, but the court disagrees. The difference in standards between a motion for preliminary injunction and a motion to dismiss is not merely nominal in nature. For brief example, when a court rules on a motion for preliminary injunction it balances several factors, [3] conducts a hearing, and takes sworn affidavits into account. Conversely, in a motion for judgment on the pleadings, the court only "consider[s] the answer as well as the complaint" and "documents incorporated by reference in the pleadings." *Fitchett v. Cnty. of Horry*, C/A No. 4:10-cv-1648-TLW-TER, 2011 WL 4435756, at *3 (D.S.C. Aug. 10, 2011) (citations omitted).

Further, while Defendants' Motion paints a broad history of the Twenty-Sixth Amendment, it falls short of persuading this court that no relief could be granted under any set of facts that could be proved consistent with the allegations in Plaintiffs' Complaint nor have Defendants shown that the claim does not exist. Accordingly, Defendants have failed to show that Plaintiffs' Twenty-Sixth Amendment claim fails as a matter of law. Therefore, the court **DENIES** Defendants' Motion to Dismiss Plaintiffs' Twenty-Sixth Amendment claim. *See Pastene v. Long Cove Club of HHI, SC,* No. C/A 9:19-1210-RMG, 2019 WL 6712077, at *3 (D.S.C. December 10, 2019) (denying motion to dismiss because "the issue in the present case is . . . a novel issue); *see also Garner v. Morrison Knudsen Corp.,* 456 S.E.2d 907, 909 (S.C. 1995) (reversing granting employer's motion to dismiss because "[w]hether the exception applies . . . is a novel issue, and such issues should not ordinarily be decided in ruling on a 12(b)(6) motion to dismiss"); *see also*

---

[3] (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346–47 (4th Cir. 2009*), rev'd on different grounds.*

*Ellsworth v. Infor Glob. Sols. (Michigan), Inc.*, No. CA 6:12-2867-HMH, 2012 WL 6641648, at *4 (D.S.C. Dec. 20, 2012) (same).

B.  <u>The Absentee Ballot Assistance Claims</u>

Next, the court discusses Plaintiffs' two claims grounded in S.C. Code § 7-15-385 or "the Absentee Ballot Assistance claims." The two causes of action are count IV, which alleges that the statute violates the First Amendment and Count V, which alleges that the S.C. Code 7-15-385 violates, and is in direct conflict with, § 2 of the Voting Rights Act of 1965. Beginning with the text of the statute, S.C. Code § 7-15-385 states, in pertinent part:

> [a] candidate or a member of a candidate's paid campaign staff including volunteers reimbursed for time expended on campaign activity is not permitted to serve as an authorized returnee for any person unless the person is a member of the voter's immediate family.

A court considering a challenge to a state election law must carefully balance the character and magnitude of injury to the First and Fourteenth Amendment rights that a plaintiff seeks to vindicate against the justifications put forward by the state for the burdens imposed by the rule. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

Defendants argue that the Absentee Ballot Assistance claims cannot violate the First Amendment as a matter of law because the act of assisting others in collection of ballots is not "expressive." (ECF No. 56 at 22.) For this argument, Defendants chiefly rely on *Knox v. Brnovich*, 907 F.3d 1167 (9th Cir. 2018) and *Voting for America, Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013). While Defendants are correct that a plaintiff must show that their claim is "inherently expressive" to establish a First Amendment claim, Defendants have not pointed the court to, and the court has not found, a case standing for the proposition that, **as a matter of law**, collecting absentee ballots is not expressive conduct.

Defendants present the following argument:

> Plaintiffs ignore that *Voting for America, Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013), which held that collecting voter-registration applications was not protected under the First Amendment, was decided on appeal from a motion for preliminary injunction.

(ECF No. 65 at 8.)

Defendants' argument does not aid them. The instant motion is one for judgment on the pleadings, not a preliminary injunction. In determining that the First Amendment was not expressive, the *Steen* Court considered extrinsic evidence such as testimony and affidavits, which the court does cannot consider here.[4] *Steen*, 732 F.3d at 392. Additionally, in *Steen* the conduct at issue was the collection of voter registration forms and not the collection of ballots. Defendants also rely on *Knox v. Brnovich*, but *Knox* was decided after a bench trial and was analyzing the specific contents of a different statute than the one here. *Knox,* 907 F.3d at 1181 (determination regarding expressive conduct took into account "Knox's sworn declaration").

C.  <u>The Election Day Cutoff Claim</u>

Finally, Defendants urge this court to dismiss Plaintiffs' Election Day Cutoff claim.[5] The crux of Plaintiffs' claim is that South Carolina's election law S.C. Code § 7-15-230, which gives

---

[4] While Defendants have submitted a thirty-three (33) page Declaration of Marci Andino (ECF No.56-2), supporting its Motion, Federal Rule of Civil Procedure 12(c) precludes the court from considering the extraneous material without converting the Motion into a Motion for Summary Judgment. *See e.g. Jiaxing Hongyu Knitting Co. v. Allison Morgan LLC*, No. 11 CIV. 09342 AJN, 2013 WL 81320, at *2 (S.D.N.Y. Jan. 8, 2013) ("proffered evidence, such as the[] Affidavit, is extraneous material that is not appropriately considered in disposing of [Defendants'] motion for judgment on the pleadings.).

[5] Plaintiffs define "Election Day Cutoff" to "mean[] that, regardless of the date a ballot is postmarked, and regardless of how responsible a voter was in timely mailing their absentee ballot, if an absentee ballot is not received by 7:00 p.m. on Election Day, it will be rejected. (ECF No. 69 n.1.)

11

the county board of voter registration and elections authority to "reject[] all mail-in absentee ballots not received by the county by 7:00 p.m. on Election Day" is "unconstitutional in violation of the First and Fourteenth Amendments and violates § 2 of the Voting Rights Act during the current coronavirus crisis." (ECF No. 69 at 41.) Plaintiffs' Complaint also contains factual support suggesting that the cutoff "particularly burden[s] the African American population, which statistically accounts for a disproportionately significant portion of the State's residents with confirmed cases of the virus and reported deaths due to COVID-19." (ECF No. 69 at 4 ¶ 8.) As a result, Plaintiffs' allege that the "Election Day Cutoff threatens to disfranchise thousands more voters this cycle than in years past, for reasons entirely out of the voters' control." (ECF No. 69 at 3 ¶ 6.)

On the other hand, Defendants would have the court dismiss the claim because, in their view, "there are no specific allegations about why having to return an absent ballot by a deadline makes it more difficult for African Americans to participate in the political process. . . and because "the complaint includes nothing to connect the timely return requirement with a burden on them." (ECF No. 56 at 32.) Defendants also attempt to persuade the court not to give much weight to "the number of late-returned absentee ballots in the 2018 general election." (*Id*.) However, the court is not weighing evidence of any kind on a motion for judgment on the pleadings.

Plaintiffs disagree and argue that they have alleged the two necessary elements of a § 2 vote-denial claim, which is sufficient to survive a motion for judgment on the pleadings. Further, Plaintiffs reiterate that they "will present evidence to support this claim at the appropriate stage in these proceedings, including most immediately in support of their forthcoming motion for a preliminary injunction." (ECF No. 61 at 5.) Both parties agree with the standard the court is to

apply to determine whether a § 2 Voting Rights Act vote-denial claim is properly alleged. In that regard, Plaintiffs need only allege plausible facts to support two elements: (1) that the challenged standards, practices, or procedures impose a discriminatory burden on members of a protected class, and (2) that the discriminatory burden is in part "caused by or linked to social and historical conditions that have or currently produce discrimination against members of the protected class." *League of Women Voters of N. Carolina v. N.* Carolina, 769 F.3d 224, 240 (4th Cir. 2014).

Here, Plaintiffs have done so. Plaintiffs allege that the Election Day Cutoff "disproportionately impact[s] and burden African American voters under the totality of the circumstances, which includes South Carolina's social and historical conditions and how they interact with and have been exacerbated by the COVID-19 pandemic." (ECF No. 1 at ¶¶ 9-10, 90- 114) (outlining social and historical disparities including access to healthcare and educational opportunities, as well as the lingering impact of discrimination and the exacerbating effect of COVID-19); *id*. at ¶¶ 139-146 (alleging § 2 claim with respect to all Challenged Provisions, collectively). With regard to Plaintiff Wells, Plaintiffs also state, "Plaintiff Wells intends to mail his absentee ballot as close to Election Day as possible. But because of delays in mail delivery, he is concerned that even if he risks his health to hand deliver his absentee ballot to the post office, it will not make it to the county board of elections before the polls close." (ECF No. 69 at 7 ¶ 14.) Similarly, with regard to Plaintiff Carlyle Dixon, Plaintiffs state, "Plaintiff Dixon has previously cast absentee ballots in person and intends to cast an absentee ballot from his home by mail as long as COVID-19 poses a threat in the upcoming elections. Plaintiff [Dixon] is concerned about the reliability of mail service at his home and what that may mean for the timely receipt and delivery of his absentee ballot before the polls close." (*Id*. ¶ 15.)

Aside from the fact that Plaintiffs have sufficiently plead facts supporting their claim, Defendants also face another obstacle to dismissing the § 2 claim. Indeed, as Defendants themselves concede, § 2 claim, once sufficiently plead, require courts to engage in a fact-intensive, "intensely local appraisal of the design and impact of electoral administration in the light of past and present reality." *League of Women Voters*, 769 F.3d at 241; (ECF No. 56-1 at 30) (Defendants conceding that the Voting Rights claim requires "intensely local appraisal..."). As a result, claims based on § 2 of the Voting Rights Act are not easily susceptible to resolution at the pleadings stage. *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 145 (4th Cir. 2014) (noting that "fact-intensive inquiry" is "often ill suited to judgment on the pleadings," unless all relevant facts are clear); *see also Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 546 (4th Cir. 2013) ("The fact-intensive character of this inquiry, however, counsels against a premature dismissal [at the motion for judgment on the pleadings stage]."). Plaintiffs have not had the opportunity to submit, and the court has not the opportunity to evaluate, all of the relevant evidence that Plaintiffs must proffer in support of their claims for relief, "including expert reports about the history and present impact of discrimination in South Carolina, as well as data regarding the impact that the Challenged Provisions have had and are likely to have on the State's African American voters." (ECF No. 61 at 6.) As a final point, Defendants, in their Reply, did not challenge Plaintiffs' assertion that "Plaintiffs are awaiting discovery responses from Defendants to include recent official voter data—preliminary returns from the June primary..." (*Id*.) The court is unpersuaded that, as a matter of law, Plaintiffs' claims fail.

## IV. CONCLUSION

Upon careful consideration of the Complaint and all arguments of the parties, the court determines that Defendants have failed to present the court with either persuasive argument or precedent establishing that any of the challenged claims fail as a matter of law based on the pleadings alone. The court hereby **DENIES** Defendants Motion for Judgment on the Pleadings. (ECF No. 56.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

July 24, 2020
Columbia, South Carolina