IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Mary T. Thomas, Nea Richard, Jeremy Rutledge, Trena Walker, The Family Unit, Inc., and the South Carolina State Conference of the NAACP<br><br>Plaintiffs,<br><br>vs.<br><br>Marci Andino, as Executive Director of the State Election Commission, John Wells in his official capacity as Chair of SC State Election Commission, Clifford J. Edler and Scott Moseley in their official capacities as Members of the South Carolina State Election Commission, and Henry D. McMaster in his official capacity as Governor of South Carolina,<br><br>Defendants. | Civil Action No. 3:20-cv-01552-JMC<br><br><br><br><br><br>MOTION TO INTERVENE BY<br>PRESIDENT PEELER |
| Kylon Middleton; Deon Tedder; Amos Wells; Carlyle Dixon; Tonya Winbush; Ernestine Moore; South Carolina Democratic Party; DNC Services Corporation/Democratic National Committee and DCCC,<br><br>Plaintiffs,<br><br>vs.<br><br>Marci Andino, as Executive Director of the State Election Commission, John Wells in his official capacity as Chair of South Carolina State Election Commission, Clifford J. Edler and Scott Moseley in their official capacities as Members of the South Carolina State Election Commission,<br><br>Defendants. | Civil Action No. 3:20-cv-01730-JMC<br><br><br><br><br><br>MOTION TO INTERVENE BY<br>PRESIDENT PEELER |

## INTRODUCTION

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, Harvey Peeler, in his capacity as President of the South Carolina Senate, moves to intervene as a defendant in each of the above-captioned actions, which improperly challenge various aspects of South Carolina Election Code as being unconstitutional because of the coronavirus. The laws the plaintiffs challenge—all of which are reasonable, evenhanded, nondiscriminatory limitations on the use of absentee ballots—have been part of the state's election law for generations, and they were previously precleared as having neither a discriminatory purpose or effect under the Voting Rights Act.

Respectfully, the existence of the coronavirus should not prompt the Court to set aside longstanding notions of federal–state comity and separation of powers, nor can a virus render lawful election procedures unconstitutional, as the plaintiffs in each case urge. Because President Peeler has been specifically authorized by the South Carolina General Assembly to intervene in litigation challenging the constitutionality of state law, the Court should grant this motion and allow President Peeler to appear in these matters.

## STANDARD FOR INTERVENTION

Rule 24(a)(2) provides that "[o]n timely motion, the court must permit anyone to intervene who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Similarly, Rule 24(b)(1)(B) permits intervention as a matter of the Court's discretion when the movant "has a claim or defense that shares with the main action a common question of law or fact."

In either instance, "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due

process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

## ARGUMENT

I. **President Peeler is entitled to intervene as a matter of right, as only the South Carolina General Assembly can assert and defend the interests that are committed to the Legislature's exclusive jurisdiction by the South Carolina Constitution.**

In order for President Peeler, on behalf of the Senate, to intervene as a matter of right, he must show that this application is timely, that he has "an interest in the subject matter of the underlying action," that he is unable to protect that interest if not allowed to intervene, and that his interest is "not adequately represented" by the existing litigants. *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). He readily meets these criteria.

**Timeliness:** By any count, this motion is timely. These cases are barely a few months old—*Thomas* was filed on April 22, 2020, and *Middleton* was filed May 1, 2020—and appear to have been filed in such a manner as to misuse the Judiciary to ambush the electoral process on the eve of the June 2020 primary election.[1] Moreover, the Court authorized the plaintiffs in each case to amend their respective complaint and reset the pleadings within the last month. (*Thomas* Dkt. No. 76 (filed July 13, 2020); *Middleton* Dkt. No. 69 (filed July 21, 2020).) And in *Thomas*, the plaintiffs dismissed Governor McMaster just two days ago, leaving this whole set of litigation for the first time without a single South Carolina elected official as a defendant. (*Thomas* Dkt. No. 107 (filed August 10, 2020).) Accordingly, this motion meets Rule 24's timeliness requirement.

---

[1] Notably, *Thomas* was filed on the exact same day a similar challenge to the state's absentee voting procedures was filed in the South Carolina Supreme Court's original jurisdiction. The Supreme Court dismissed that challenge as being nonjusticiable. *Bailey v. S.C. State Election Comm'n*, 844 S.E.2d 390, ___, Op. No. 27975, 2020 S.C. LEXIS 77 (S.C. 2020).

**Interests in Subject Matter:** The South Carolina Constitution exclusively commits the subject matter of this litigation to the South Carolina General Assembly—not to private litigants, not to political parties, not to the executive branch, and, respectfully, not to the federal or state judiciary. *See* S.C. Const. art. II, § 10 ("The General Assembly shall provide for the nomination of candidates, regulate the time, place and manner of elections, provide for the administration of elections and for absentee voting, insure secrecy of voting, establish procedures for contested elections, and enact other provisions necessary to the fulfillment and integrity of the election process.").

President Peeler, on behalf of the Senate, certainly has an interest in upholding South Carolina's constitutional structure, as well as its election laws that have already withstood scrutiny under previously-operative provisions of the Voting Rights Act. In this regard, President Peeler has an interest in preventing uncertainty and mass confusion that would necessarily follow rewriting portions of the Election Code through the litigation process—with the prospect of appeals, stays, and other procedural devices—on the eve of the next election. *See generally Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (reiterating that "[t]his Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election," in part because of a need to avoid "judicially created confusion" regarding elections).

President Peeler also has an interest in ensuring that federal–state comity remains intact and separation-of-powers norms are properly preserved, as the plaintiffs in both cases are asking the Court to review long-established parts of South Carolina's election law and, under the guise of a constitutional analysis, declare that South Carolina law does not do "enough" with respect to absentee voting during the COVID-19 pandemic. This is especially overreaching in light of the

fact that circumstances surrounding COVID-19 are changing by the moment, and what may appear to be "enough" (in the plaintiffs' views) one day may be insufficient or unnecessary the next.

Such policy judgments are political, not legal, questions that are rightly addressed by (and constitutionally committed to) the South Carolina General Assembly. *See, e.g.*, *Coalition for Good Governance v. Raffensperger*, Case No. 1:20-cv-1677-TCB, 2020 U.S. Dist. LEXIS 86996, at *6–10 (N.D. Ga. May 14, 2020) (dismissing claims seeking virtually the same relief regarding absentee voting as the plaintiffs' present here because "they present a nonjusticiable political question"); *Bailey v. S.C. State Election Comm'n*, 844 S.E.2d 390, ___, Op. No. 27975, 2020 S.C. LEXIS 77, at *6–11 (S.C. 2020) (dismissing a similar challenge to South Carolina's absentee voting laws in the wake of the COVID-19 pandemic as a nonjusticiable political question).

Accordingly, President Peeler undoubtedly has a material interest in these cases that justifies intervention as a matter of right.

**Unable to Protect Interests:** If the Court denies intervention, President Peeler will be unable to protect his and the Senate's interests outlined above. In particular, there is no way for the Senate to protect its policy judgments if the Court accepts the plaintiffs' invitations to rewrite the South Carolina Election Code through litigation. Nor will he be able to assert and protect the interests associated with election laws that are unique to the General Assembly; namely, the exclusive authority to draft and, if necessary, modify them that is vested in the legislature by the South Carolina Constitution.

**Not Adequately Represented by Existing Parties:** Finally, none of the existing parties can adequately represent President Peeler's interests in this litigation. None of the defendants are elected officials, and—though some of their arguments no doubt align with President Peeler's in some respects—none are charged with defending the constitutionality of state laws or the political

5

judgments and processes of the South Carolina General Assembly. However, President Peeler is. *See* 2019–20 Appropriations Act § 91.26 (vesting the President of the Senate with "an unconditional right to intervene" in cases in which the constitutionality of a state statute or "any action of the Legislature" is challenged, including in matters pending in federal court).

The Court has previously recognized that such legislation authorizes intervention as a matter of right for state legislative leaders. *See, e.g.*, *SCE&G v. Whitfield*, Case No. 3:18-cv-1795-JMC, 2018 U.S. Dist. LEXIS 120174, at *11 (D.S.C. July 18, 2018) ("Additionally, if a state statute or legislative act gives legislative leaders authority to defend legislative enactments, then the legislative leaders are able to intervene as a matter of right."). This is particularly true in cases such as this, where the Attorney General has failed to appear in the matter beyond an amicus filing. *See id.* at *13 n.11 (noting that when, as here, the Attorney General only participates as an amicus, he does not appear on behalf of any of the parties but instead appears only for the court's benefit).

Accordingly, President Peeler has a right to intervene in this matter, and respectfully requests that the Court allow him to do so pursuant to Rule 24(a)(2).

**II.	Alternatively, President Peeler should be permitted to intervene because the interests he seeks to assert and defend are put squarely in issue by the plaintiffs' requests that the Court rewrite the South Carolina Election Code to account for the COVID-19 pandemic.**

If the Court does not believe that President Peeler has a right to intervene, it should still permit him to intervene on behalf of the South Carolina Senate. As the Court has recognized in this same litigation, Rule 24(b) "should be construed liberally in favor of intervention." *Thomas v. Andino*, Case No. 3:20-cv-1552-JMC, 2020 U.S. Dist. LEXIS 81630, at *8 (D.S.C. May 8, 2020) (quoting *Savannah Riverkeeper v. U.S. Army Corps of Eng'rs*, Case No. 9:12-610-RMG, 2012 U.S. Dist. LEXIS 200026, at *7 (D.S.C. Aug. 14, 2012)). Permissive intervention should be allowed when a motion is timely filed, when the movant asserts a common question of law or fact

to that already presented in the case, and when the intervention will not unduly delay the litigation. *SCE&G*, 2018 U.S. Dist. LEXIS 120174, at *9.

As explained above, this motion is timely filed, as the plaintiffs in both cases revised and reset their pleadings not even a month ago, and these cases were left without a single South Carolina elected official just two days ago. Additionally, President Peeler does not anticipate seeking any changes to the existing schedules for either of these cases. As discussed in the next section, he believes the Court should dismiss them as nonjusticiable political questions or, alternatively, abstain from deciding them in deference to federal–state comity, but President Peeler is ready to meet the current schedule if the Court determines that this matter is one that is appropriately resolved by the federal judiciary. *Cf. Thomas*, 2020 U.S. Dist. LEXIS 81630, at *15 (approving the South Carolina Republican Party's permissive intervention in this matter in part because it affirmed that it would comply with the case's existing schedule).

In addition to this motion being timely and not likely to delay the cases, President Peeler's position in this case arises exclusively from the same laws that are presented in these two complaints. The *Thomas* plaintiffs challenge the lawfulness of South Carolina's—in their words—"Witness Requirement" and "Qualifications Requirement" for absentee voting and ask the Court to modify those to account for COVID-19. Similarly, the *Middleton* plaintiffs challenge the lawfulness of South Carolina's—again, in the plaintiffs' words—"Absentee Ballot Age Restriction," "Witness Requirement," the "Election Day Cutoff," and the "Absentee Assistance Ban" for absentee voting and ask the Court to modify those to account for COVID-19.

President Peeler's interest in this case—defending the South Carolina Election Code, in particular, and the primacy of the General Assembly in setting the state's election laws as required by the South Carolina Constitution, in general—is squarely within the scope of the issues that the

plaintiffs have presented to the Court in these matters. Accordingly, President Peeler should be permitted to intervene in these cases to protect the South Carolina Senate's interests that are at issue in, and jeopardized by, this litigation.

III. **If this motion is granted, President Peeler intends to seek dismissal of these matters as presenting nonjusticiable political questions or, alternatively, pursuant to traditional abstention principles, as well as to defend the legality of the challenged statutes if the Court believes that these cases are properly before it.**

Pursuant to Rule 24(c), President Peeler wants to ensure there is no doubt as to his position in these matters if the Court grants this motion. *See SCE&G*, 2018 U.S. Dist. LEXIS 120174, at *6 n.4 (providing that a potential intervenor need not attach a proposed pleading to its motion to intervene as long as the motion "provides notice to the court and the parties of his intention in the case"). President Peeler's position on the issues of this litigation are as follows:

**Nonjusticiable Political Questions:** President Peeler believes that the issues of this case are political questions that are exclusively committed to the South Carolina General Assembly for resolution as a matter of constitutional law. *See* S.C. Const. art. II, § 10 ("The General Assembly shall provide for the nomination of candidates, regulate the time, place and manner of elections, provide for the administration of elections and for absentee voting, insure secrecy of voting, establish procedures for contested elections, and enact other provisions necessary to the fulfillment and integrity of the election process."). The plaintiffs are asking the Court to substitute its policy judgment, all under the guise of a constitutional analysis, regarding South Carolina's absentee voting procedures. The Court should refuse to accept this invitation to violate the separation-of-powers doctrine and adjudicate an issue that is committed to a different part of government.

**Abstention:** Similarly, this Court should abstain from resolving these matters, as the issues presented are questions that are properly addressed at the state level. Indeed, some of these same plaintiffs have previously presented similar arguments to the South Carolina Supreme Court and

are attempting to do so again even today. *See Bailey v. S.C. State Election Comm'n*, 844 S.E.2d 390, ___, Op. No. 27975, 2020 S.C. LEXIS 77, at *6–11 (S.C. 2020) (dismissing as a nonjusticiable political question a challenge to South Carolina's absentee voting laws that was brought by the South Carolina Democratic Party and the DCCC, both of whom are plaintiffs in the *Middleton* case, on the very same day that the *Thomas* case was filed); *Duggins v. Lucas*, Appellate Case No. 2020-001042 (filed with the South Carolina Supreme Court in its original jurisdiction on July 31, 2020, challenging the entirety of the state's absentee voting laws in light of COVID-19, and being represented by the South Carolina Democratic Party as counsel).[2]

**Challenged Laws Are Constitutional:** Finally, President Peeler believes that the laws that are being challenged are constitutional, for at least the reasons argued by the Election Commission in its motion for summary judgment in the *Thomas* case. *See, e.g.*, *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 402–09 (5th Cir. 2020) (rejecting similar attacks on Texas's absentee voting procedures as presented by the plaintiffs in these cases and explaining that rational-basis review governs challenges of this type).

## CONCLUSION

For the reasons explained above, President Peeler respectfully requests that the Court grant this motion and allow President Peeler to intervene in both of these matters. President Peeler further states that prior to filing this motion, he consulted with counsel of record regarding the relief sought. Counsel for the plaintiffs indicated that they oppose this motion, and counsel for the defendants and the intervening-defendant indicated that they consent to this motion.

---

[2] A copy of the *Duggins* petition that is presently pending before the South Carolina Supreme Court is attached as Exhibit A.

Respectfully submitted,

WOMBLE BOND DICKINSON (US) LLP

By: /s/ Kevin A. Hall
　　Federal Bar No. 5375
　　kevin.hall@wbd-us.com
　　M. Todd Carroll
　　Federal Bar No. 9742
　　todd.carroll@wbd-us.com
　　1221 Main Street, Suite 1600
　　Columbia, South Carolina 29201
　　803-454-6504

Attorneys for Senator Harvey Peeler, in his capacity as President of the South Carolina Senate

August 12, 2020
Columbia, South Carolina