FILED: September 25, 2020

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 20-2022
(3:20-cv-01730-JMC)

_____

KYLON MIDDLETON; DEON TEDDER; AMOS WELLS; CARLYLE DIXON; TONYA WINBUSH; ERNESTINE MOORE; SOUTH CAROLINA DEMOCRATIC PARTY; DNC SERVICES CORPORATION/DEMOCRATIC NATIONAL COMMITTEE; DEMOCRATIC CONGRESSIONAL CAMPAIGN COMMITTEE,

      Plaintiffs – Appellees,

v.

MARCI ANDINO, in her official capacity as Executive Director of the South Carolina State Election Commission; JOHN WELLS, in his official capacity as Chair of the South Carolina State Election Commission; CLIFFORD J. ELDER, in his official capacity as member of the South Carolina State Election Commission; SCOTT MOSELEY, in his official capacity as member of the South Carolina State Election Commission,

      Defendants – Appellants,

JAMES H. LUCAS, Speaker of the South Carolina House of Representatives; HARVEY PEELER, in his capacity as President of the South Carolina Senate,

      Intervenors/Defendants – Appellants,

SOUTH CAROLINA REPUBLICAN PARTY,

      Intervenor – Appellant.

------------------------------

STATE OF SOUTH CAROLINA,

Amicus Supporting Appellants.

_____

O R D E R

_____

A majority of judges in regular active service and not disqualified having voted in a requested poll of the court to grant rehearing en banc, rehearing en banc is granted. This court's September 24, 2020, order staying the district court's injunction is vacated, and all filings relative to the motion for stay are referred to the en banc court for consideration. Judge Richardson recused himself and took no part in the en banc poll.

                              For the Court

                              /s/ Patricia S. Connor, Clerk

WILKINSON and AGEE, Circuit Judges, dissenting from the grant of rehearing *en banc*:

We would stay the district court's order enjoining enforcement of a witness signature requirement for absentee ballots in S.C. Code §7-15-380. That order represents a stark interference with South Carolina's electoral process right in the middle of the election season.

To merit a stay pending appeal, appellants must show they are likely to succeed on the merits, that they will be irreparably injured absent a stay, that the equitable balance favors a stay, and that a stay benefits the public. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

Appellants are likely to succeed on appeal because appellees have a legally unsupportable case. The Constitution makes it clear that the principal responsibility for setting the ground rules for elections lies with the state legislatures. U.S. Const. art. I, §4, cl. 1 ("The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof . . . ."). Thus, "the federal Constitution provides States—not federal judges—the ability to choose among many permissible options when designing elections." *Thompson v. Dewine*, 959 F.3d 804, 812 (6th Cir. 2020) (per curiam). The district court's order upends this whole structure and turns its back upon our federalist system.

The majority's disregard for the Supreme Court is palpable. The Supreme Court has repeatedly cautioned us not to interfere with state election laws in the "weeks before an election." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam); *see also Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam). The district court failed to give this command proper weight. Although we share the district court's

concerns about COVID-19's potential impact on elections, the pandemic does not give judges "a roving commission to rewrite state election codes." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 394 (5th Cir. 2020).

Finally, even if an election were not a few weeks away, South Carolina's law is commonplace and eminently sensible. It is designed to combat voter fraud, a fight which "the State indisputably has a compelling interest" in winning. *Purcell*, 549 U.S. at 4 (quoting *Eu v. San Francisco Cty. Democratic Central Comm.,* 489 U.S. 214, 231, (1989)). That is not an abstract concern. Just last year, the election in North Carolina's 9th Congressional district was overturned on the basis of absentee ballot fraud. *See* Ely Portillo & Jim Morrill, *Mark Harris calls for new election in 9th District*, Charlotte Observer (Mar. 7, 2019), https://www.charlotteobserver.com/news/politics-government/article226550555.html.

Just think of all the areas in which law requires witnesses and notaries to inspire trust in official documents and acts and to convey their authenticity. It is therefore unsurprising that the courts of appeals have resisted overturning these laws. *See Democratic Nat'l Comm., et al. v. Bostelmann, et al.*, No. 20-1538, 2020 WL 3619499 (7th Cir. Apr. 3, 2020) (reversing district court's preliminary injunction against witness requirement for absentee ballots); *see also Common Cause Rhode Island v. Gorbea*, 970 F.3d 11, 16 (1st Cir. 2020) (per curiam) (stating it would be "inclined" to stay the preliminary injunction against a requirement that absentee voters have *two* witnesses absent

"two unique factors" present in that case).*

Second, appellants will suffer irreparable injury in the absence of a stay. All three branches of South Carolina's government have addressed whether absentee voters should be required to have a witness. The General Assembly passed two pieces of legislation on the subject, the Governor signed both bills, and the South Carolina Supreme Court heard a case challenging the witness requirement. No member of our Court now holds elected office, much less an elected or appointed office of the State of South Carolina. By

---

* We wish to impress our respect for the able district judge who like all of us is dealing with sensitive issues in challenging circumstances. Although we would ordinarily ascribe considerable weight to a district court's factual findings, the district court made two legal errors that undermine them. First, the district court gave inadequate weight to *Purcell*'s command that it not interfere with a state voting procedure shortly before an election. It erred in relying on the First Circuit's decision in *Gorbea*, J.A. 60, which was different because Rhode Island had agreed in a consent decree to eliminate a requirement that absentee voters obtain *two* signatures and no branch of Rhode Island's government sought to defend the requirement *Gorbea*, 970 F.3d at 16. None of those material facts are present here.

Second, the district court legally erred in minimizing South Carolina's interest in preventing voter fraud, suggesting this interest is not legitimate because of "an utter dearth of absentee voter fraud." J.A. 80. South Carolina is not required to produce evidence of voter fraud to demonstrate it has a legitimate interest in maintaining the integrity of its elections. The Supreme Court has *repeatedly* held that a State "indisputably has a compelling interest" in combatting voter fraud. *Purcell*, 549 U.S. at 4 (quoting *Eu*, 489 U.S. at 231); *see also John Doe No. 1*, 561 U.S. 186, 197 (2010) ("The State's interest is particularly strong with respect to efforts to root out fraud, which not only may produce fraudulent outcomes, but has a systemic effect as well . . . ."). Indeed, the Supreme Court stated that "[t]here is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters" in a case where the "record contain[ed] no evidence of any such fraud actually occurring in Indiana at any time in its history." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 194–96 (2008). The district court thus erred by suggesting the State lacked a compelling interest in combatting voter fraud based on its failure to prove it is a major problem. J.A. 80. However, we also note that South Carolina *did* present evidence of voter fraud, even though it did not need to. *See, e.g.*, J.A. 408–26 (showing evidence of voter fraud in South Carolina).

substituting its own policy choice for that of the representatives of the Palmetto State, the district court's injunction robs South Carolina of its sovereign prerogative to determine the rules for its elections. Enjoining a "State from conducting [its] elections pursuant to a statute enacted by the Legislature . . . seriously and irreparably harm[s] [the State]." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018).

Third, it is clear that the equitable balance favors appellants. This law is not burdensome to appellees. Only a single witness is required. Most people can easily call upon a family member or friend to be their witness. Dr. Cassandra Salgado, the division director for infectious diseases at the Medical University of South Carolina, testified that the witness requirement would not "pose a significant risk" because it takes little time and can be done with facemasks, social distancing, and proper hygiene. J.A. 406.

Indeed, enjoining the witness requirement might result in absentee voting becoming *more* difficult. The legislature chose to make absentee balloting widely available in response to COVID-19, but it also specifically debated whether to maintain the witness requirement to increase confidence in the election's integrity. Both houses of the General Assembly rejected proposals to eliminate the requirement. *See* S. Journal No. 47 (Sept. 2, 2020); H. Journal No. 40 (Sept. 15, 2020); H. Journal No. 39 (June 24, 2020). If the courts ignore these legislative compromises and strip away safeguards, legislatures will be tempted to rescind their expansion of absentee voting.

Fourth, the district court's preliminary injunction is not in the public interest. More and more it appears, political parties seem to be bringing these election law challenges in an effort to gain partisan advantage. This trend is deeply disturbing. Selective interventions

6

by the courts in these cases will create the appearance of partisanship. They undermine our most valued asset, the public's trust and confidence in the judiciary. They also create confusion and make it more difficult for the States to run their elections. It is a challenging enough task to run an election in these trying circumstances without the uncertainty and upheaval of injunctions, stays, appeals, etc. This "judicially created confusion" is one reason why the Supreme Court has prohibited lower courts from changing voting rules shortly before elections. *See, Republican National Committee*, 140 S. Ct. at 1207.

It matters not which party brings this challenge, or from which State it comes. What matters is that confusion and disruption will beset the States' electoral processes if this sort of pre-election litigation becomes commonplace. Appellants should seek to vindicate promptly their constitutional prerogatives before the only tribunal that can finally and definitively bring an end to this mischief: the United States Supreme Court.